Declaration of Joseph T. Flood

I, Joseph T. Flood, declare under penalty of perjury that the following is true.

1.  I have practiced criminal defense law for over 30 years.  I have a B.A. degree in psychology, and as a lawyer have focused on cases presenting complex mental health issues.  On March 8, 2021, I began serving as lead defense counsel for the late Christopher Lapp.  I remained Dr. Lapp's lawyer until his suicide on May 18, 2021.

2.  During the period of my representation of Dr. Lapp, I was aware of his mental health history and his treatment at FMC Butner for restoration of competence.  I knew that Dr. Lapp, having finally agreed to be treated with psychotropic medications at Butner, had been found competent by his treating professionals, and thereafter also by order of the Hon. T. S. Ellis, who was presiding over his criminal case.

3.  On April 16, 2021, Dr. Lapp pleaded guilty, in my presence, to three of the four counts against him.  I deemed him, on that occasion, to have a rational and factual understanding of the proceedings, and to have been helpful to me as his lawyer, and so advised Judge Ellis.

4.  On the day Dr. Lapp entered his guilty plea, he informed Judge Ellis that he was no longer taking the medications that he had been prescribed at Butner, because "I was not prescribed by the psychiatrist presiding in this facility in Alexandria."  The prosecutor informed Judge Ellis that, as she understood, the local doctor had said "I don't think you need this medication at this point."  Dr. Lapp told Judge Ellis that he did not know if his doctor at Butner, Dr. Graddy, was aware that he was no longer on his medications.  I told Judge Ellis that I did not know either, as I had received no response to three calls I had made to Butner.

5. At the April 16 hearing, I pointed out to Judge Ellis' that Dr. Lapp had not, in fact, been returned to Butner after his prior hearing in court, as I understood was supposed to have happened. I pointed this out because it seemed clear to me that it was Dr. Lapp's treatment and medication at Butner that had restored him to competence, and I wanted to assure his ongoing competence through his sentencing, which would not take place until after a pre-sentence report was completed. I thought it obvious that he should remain on the medications that had restored him to competence, and that if these were unavailable at the Alexandria Adult Detention Center, he should be returned to Butner.

6. Judge Ellis thereupon ordered Dr. Lapp's return to Butner, where he would be "cared for medically thoroughly." In responding "We fully concur, Your Honor," I was taking an unusual position as defense counsel. I ordinarily resist efforts to institutionalize my clients for purposes of medicating them, and agree to such a protocol only if it is perfectly clear to me that my client requires such institutionalization and treatment to enhance his legal position. In Dr. Lapp's case, I believed we would be able to make a very strong presentation at sentencing to the effect that at the time he committed his crimes, Dr. Lapp was suffering from a mental illness that significantly reduced his mental capacity, reason, and judgment. I wanted him to be cooperative and competent, and for that reason, I wanted him to continue receiving his medications that had restored him to competence.

7. Following the hearing, Judge Ellis entered an order directing the Marshals Service "promptly to return defendant to FCI Butner so defendant may remain under the case of Dr. Graddy."

8. On April 23, 2021, having learned that Dr. Lapp had not been returned to Butner, I filed a notice to this effect in court. Given my normal preference to have my clients available at a local detention center, my usual resistence to having clients sent away for medication, and my plans for Dr. Lapp's presentation at sentencing, my provision of this notice reflected my concern that Dr. Lapp would deteriorate if left unmedicated at the ADC. Indeed, to the best of my recollection, I had previously told at least one staff member at the ADC that in light of the of the circumstances facing Dr. Lapp, his situation gave me pause, that, I was concerned for his well-being and asked that staff keep a close eye on him.

Dated: February 24, 2023

*Joseph Flood*
Joseph T. Flood