UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| LISA LAPP, *et. al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case #1:23-cv-248 (MSN/LRV) |
| | ) | |
| THE UNITED STATES OF AMERICA, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

_____

MEMORANDUM IN OPPOSITION TO
THE UNITED STATES' PARTIAL MOTION TO DISMISS

_____

Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com

Counsel for Plaintiff

Contents

I.     The United States is Not Being Sued For
       Immunized Prosecutorial Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       Addendum re Prosecutorial Defaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.    J.L.'s Claims Have Been Properly Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The government's motion to dismiss some of the claims against it is predicated on a failure to distinguish prosecutorial from non-prosecutorial functions of an attorney, and on an untenable reading of the complaint at bar.  The motion should be denied.

I. <u>The United States is Not Being Sued For Immunized Prosecutorial Activity</u>

Plaintiff Lisa Lapp – or, as the government apparently believes she must be called every time her name is invoked: Plaintiff Lisa Lapp, Mother and Next Friend of Plaintiff J.L. and Administrator of the Estate of Christopher Lapp – embraces the government's view that on the issue of prosecutorial immunity, "'courts take a "functional approach," looking to the "nature of the function performed" and not the "identity of the action who performed it."'"  ECF 21 at 9, quoting settled Fourth Circuit and Supreme Court authority.  The question is, then, whether in ignoring Judge Ellis' April 16, 2021 order, the prosecutors negligently engaged in  immunized prosecutorial activity.

Courts assess the availability of immunity of federal personnel under the Federal Tort Claims Act ("FTCA") along the same lines as these matters are addressed in cases arising under 42 U.S.C. §1983.  *Annappareddy v, Lating*, 2023 WL 2540306 at *6-*7 (D. Md. Mar. 16, 2023); *Garrett v. Sholl*, 2018 WL 9538226 at *2 (M.D. Fl. Aug. 17, 2018).  There is no language in §1983 extending immunity of any kind to anyone, and the Supreme Court has long recognized that absolute immunity cannot be granted to all officials without negating the very remedy Congress sought to create.  *Scheuer v. Rhodes*, 416 U.S. 232, 243 (1974) (abrogated on other

grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). [1]  The Court has been  "quite sparing" in

its  recognition of absolute immunity, and has refused to extend it "further than its justification

would warrant."  *Id*. at 487.  An official seeking absolute immunity bears the burden of showing

that such immunity is justified for the governmental function at issue in the case.  *Id.*  Courts

have no license to establish immunities "in the interests of what [they] judge to be sound public

policy."  *Id.* at 493.

With regard to prosecutors, the focus of the government's motion, absolute immunity

from §1983 damages attaches solely to conduct "intimately associated with the judicial phase of

the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Courts look to the nature

of the conduct, not the actor who engages in it. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269

(1993) (no absolute immunity for prosecutor's investigatory or press activities); *Burns v. Reed*,

500 U.S. 478, 495 (1991) (no immunity where prosecutor gives advice to police during a

criminal investigation); *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997) (no absolute immunity

for prosecutor submitting her own sworn statement of facts in support of application for arrest

warrant).

Applying this standard, the Supreme Court has held that a prosecutor enjoys absolute

immunity when he or she presents the trial testimony of witnesses,  *Imbler*, *id*., participates as

counsel in a probable cause hearing, *Burns, id*., or appears in court to present evidence in support

of a search warrant application, *Kalina v. Fletcher*, 522 U.S. 118 (1997).  The government's

---

[1] "The presumption is that qualified immunity rather than absolute immunity is sufficient
to protect government officials in the exercise of their duties."  *Burns v. Reed*, 500 U.S. 478,
486-87 (1991). The government has not claimed qualified immunity for the prosecutors'
negligence in this claim under the Federal Tort Claims Act, nor could it (and on rebuttal to boot).

invocation of absolute immunity in the instant case paints with such a broad brush as to ignore the critical functional distinction between acts of prosecutorial advocacy that warrant absolute immunity, and prosecutors' acts falling outside this category.

While presenting different offenses than those here at issue, *Buckley* offers an instructive analysis of the historical as well as functional approach to the issue of prosecutorial immunity mandated by the Supreme Court.  Faced with an appellate holding that a prosecutor had immunity for fabricating evidence, the Supreme Court, reversing, held that Congress preserved only immunities "well grounded in history and reason." *Buckley,* 509 U.S. at 268.

> "The reason that lack of probable cause allows us to deny absolute immunity to a state actor for the . . . fabrication of evidence is that there is no common law tradition of immunity for it, whether performed by a police officer or prosecutor.  The reason that we grant it for . . . malicious prosecution is that we have found a common law tradition of immunity for a prosecutor's decision to bring an indictment whether he has probable cause or not."

*Id*. n. 5.

Consider the instant case.  The government has not shown – because it cannot show – a "common law tradition" of immunizing prosecutors who knowingly ignore court orders and suffer them to be ignored.  What Justice Scalia stated in his concurring opinion in *Buckley* about the prosecutors' alleged wrongdoing in that case applies word for word to the prosecutors in *United States of American v. Lapp* in knowingly and flatly ignoring a binding court order:

> [R]espondents have not demonstrated that the function either of
> fabricating evidence during the preliminary investigation of a
> crime, or of making out-of-court statements to the press, was
> protected by the well-established privilege in 1871, when §1983
> was enacted.  It follows that respondents' alleged performance of
> such acts is not absolutely immune from suit under §1983, since
> the presumed legislative intent not to eliminate traditional
> immunities is our only justification for limiting the categorical
> language of the statute. ...[T]he court reaffirms that the defendant
> bears the burden of showing that the conduct for which he seeks
> immunity would have been privileged at common law in 1871...
> Thus, if application of the principle is unclear, the defendant
> simply loses.

*Id.* at 279-81.

While Ms. Lapp respectfully submits that the analysis in *Buckley* is dispositive of the

matter at hand, consider, as well, the factors elaborated by the Fourth Circuit in *Ehrlich v.*

*Giuliani*, 910 F.2d 1220, 1223 (4th Cir. 1990) for use in a "close case":

> [I]n close cases, courts drawing the line and deciding whether
> absolute immunity applies generally look to the following factors:
> I)   the centrality of the challenged conduct to the criminal justice
> system,
> ii)  the substantiality of the threat of vexatious litigation, and the
> extent to which that threat would inhibit performance of important
> public duties, and
> iii) the availability of alterative mechanisms to safeguard against
> prosecutorial misconduct.

As to the first factor: the government will presumably concede that it is manifestly not

central to our criminal law system for its prosecutors to ignore and disregard court orders.  As to

the second factor: the prosecutorial default at issue here was, happily, rare.  There is no basis for

any concern of litigation, vexatious or otherwise, arising out of prosecutors' blithely ignoring

judges' orders.  Nor can it be contended that requiring prosecutors not to ignore and disregard

court orders might inhibit the performance of any public duties.  Indeed, the opposite is true.

-4-

As to the third factor, in the rare event of such prosecutorial misconduct, judicial or professional disciplinary action may help safeguard against repetition. Indeed, in the instant case Judge Ellis ordered a show-cause hearing at which he berated government counsel.  *United States of America v. Lapp,* 1:19-cr-99 (E.D.Va. June 25, 2021) (henceforth *"Lapp,"*) hrg. transcript at 10:9-11:16.  The remedy of contempt is, however – as here – woefully after-the-fact and inefficacious for an intended beneficiary of the ignored order.

The case of *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008), is illuminating here, not in the least because of its striking similarity to the instant case so far as the generic actions and principles at issue are concerned.  In *Odd*, a prosecutor, having properly secured warrants for the pre-trial detention of uncooperative witnesses, failed to inform the judge that one of the criminal cases had been dismissed and the other, continued.  As a result, the witnesses remained in jail far longer than anticipated by the court.  They sued, and the prosecutor claimed prosecutorial immunity, advancing the exact arguments presented here by the government.[2] It was plain that the prosecutor had to present information to the court, presumably by motion, relative to the delayed criminal prosecutions at issue, so that the court might release the witnesses. The Third Circuit nevertheless found that the prosecutor's duty to inform the court in timely fashion of the ongoing incarceration was "primarily administrative," requiring "no advocacy" on her part. The Court held that the "policies underlying the recognition of prosecutorial immunity" did not

---

[2]The government writes, ECF 21 at 10: "Plaintiffs . . . suggest that the AUSAs should have filed a notice with the Court informing Judge Ellis that his order had not been executed, a motion seeking to modify that order, or an appeal of the order . . . . In essence, Plaintiffs seek to hold the United States liable for the AUSA's decision not to file a paper in this Court as the legal advocate for and representative of the United States. . . .  Absolute prosecutorial immunity shields the United States from liability under these circumstances."

protect her from having failed to communicate the information at issue to the presiding judge.

*Id.* at 213, 217.  This is exactly the case here.  Were *Odd* a Fourth Circuit case, it would stand as

dispositive authority.[3]  There is no absolute judicial immunity available here.


Addendum re Prosecutorial Defaults

Ms. Lapp respectfully submits that the above discussion is dispositive of the immunity

defense raised by the government.  For another reason, however, it is at best premature to

dismiss her claims predicated on prosecutorial defaults.  For if Judge Ellis' order was indeed

valid, as Ms. Lapp respectfully submits,[4] then it would have been negligent for the prosecutors

---

[3]The United States does invoke a Fourth Circuit case  – *Nero v Mosby,* 90 F.3d 106 (4th Cir. 2018)  – but with such a broad brush as to hide its manifest inapplicability to the defaults here at issue.  At issue in this case is not "filing papers with the court during the course of a criminal proceeding," ECF 21 at 10, but knowingly ignoring and disregarding a binding order.  Unlike the instant case, *Nero v. Mosby* presents a garden variety application of the rule shielding prosecutors for their prosecutorial acts.

[4]The provisions of  §4241(e) gave Judge Ellis the flexibility to make his ruling.  He was aware that Dr. Lapp intended to plead guilty in the belief that the government would not punish him severely. See *Lapp*,  ECF 91 and 92 (noting Dr. Lapp's desire to "get to plea").  Given (1) the long and uneven course Dr. Lapp had traveled with Dr. Graddy's assistance on the road to competence, (2) the view of Butner personnel and held by Judge Ellis and defense counsel that Mr. Lapp, who displayed little insight into his illness or his need for medication, required continued attention and medication to remain competent, (3) the cyclical nature of his mental disease and the most recent characterization of his condition as no more than "fair," *Lapp*, ECF 123 at 10, and, critically, (4) the scheduling of Dr. Lapp's sentencing half a year into the future – given these factors, Judge Ellis' finding on March 5th was hardly a finding of anything except that Dr. Lapp was "currently" (*sic*) competent to proceed with a plea to take place in the near future.  *Lapp,* March 5, 2021 hrg. transcript at 22:10-11.  Judge Ellis made no finding, and could not possibly have made a finding, that this defendant, with his cyclical  illness, difficult history, and no more than "fair" current condition, would remain able to "assist properly in his defense" half a year later when sentenced.  Much to the contrary, on the occasion of Dr. Lapp's guilty plea, Judge Ellis stated, with reference to Dr. Lapp's return to Butner: "I think the sooner he's – I want him cared for medically thoroughly."  *Lapp*, April 16, 2020 hrg. transcript at 50:13-21.  As Judge Ellis cogently observed following Dr. Lapp's death: "there are problems with new

who received it not to advise the responsible parties in other branches of government – namely, Butner and the Marshals Service – that it was incumbent on them to abide by it, to the benefit of its specifically designated beneficiary Dr. Lapp.  Discovery, begun immediately after it was permitted, will clarify who communicated what to whom about the need to abide by, or the right to ignore, Judge Ellis' order.  Pending clarification of these matters, it is premature to dismiss claims predicated on alleged prosecutorial negligence arising out of collateral communication with representatives of Butner and the Marshals Service.  Under the authority discussed above, such communications do not fall within immunized prosecutorial activity.

## II. <u>J.L.'s Claims Have Been Properly Presented</u>

This case was filed by Lisa Lapp as Administrator of The Estate of Christopher Lapp and Mother and Next Friend of her daughter J.L.  ECF 5 at 1.  Paragraphs 9 and 10 identify the parties as follows:

---

physicians looking at patients, but there was no doubt that his medication was important." *Lapp*, June 25, 2020 hrg. transcript at 14:22-23. Under 18 U.S.C. §3552(b), a court seeking mental health information in aid of formulating an appropriate sentence for an accused can order the accused placed in the custody of the Bureau of Prisons for this purpose. Concerns regarding the orderly administration of justice also supported Judge Ellis' order.  With Dr. Lapp's sentencing delayed for half a year, were he to regress on being removed from the known, supportive and successful care of Dr. Graddy, the court and the parties would face not merely another delay, but the medically and legally complex issue of whether to involuntarily medicate Dr.  Lapp in an effort to restore him to competence.  *See Sell v. United States*, 539 U.S. 166 (2003).  Manifestly, it was appropriate for Judge Ellis to act to preclude such a result even after declaring Dr. Lapp competent  – and he did so twice, once with no objection from the government, *Lapp,* March 5, 2021 hrg. transcript at 22:12-18, and a second time with the express agreement of the government, *Lapp,* April 16, 2021 hrg. transcript at 50:13-19.  As it backtracks from its repeated acquiescence to such a disposition, the government does not, because it cannot, point to any statutory mandate overriding Judge Ellis' order and justifying its position. The point is academic, however, to the extent the government's initial liability rests on what its prosecutors did not do rather than on whether its legal position was correct.

9.      Plaintiff Lisa Lapp is the duly appointed administrator of the estate of the late Christopher Lapp.

10.     Plaintiff J.L. is the 16-year old daughter of Christopher Lapp and Lisa Lapp. She sues by her mother and next friend, Lisa Lapp. Under CODE OF VA. §8.01-53(A), she is the sole statutory beneficiary of Christopher Lapp's wrongful death claims brought here.

Counts II and VI present two claims under the Federal Tort Claims Act for wrongful death, the second conditioned on the defenses available to defendant Dean Inouye:

78.     But for the federal actors' grossly negligent and willful violation of Judge Ellis' unchallenged order to return Dr. Lapp to Butner for ongoing care at the hands of mental health professionals who knew him and had successfully treated him, so as to ensure his continued competence through sentencing, as set forth above, Dr. Lapp would not have remained at the Alexandria ADC to be deprived of his psychotropic medications by Dr. Inouye. Given his substantial improvement under the care he had received at Butner, it is reasonably foreseeable that had he returned to Butner, he would have been properly cared for and not ended up committing suicide. *Pursuant to the FTCA, the United States is thus liable for the damages resulting from Dr. Lapp's wrongful death under Code of Va. §8.01-50 et seq. The sole beneficiary under this claim, pursuant to §8.01-53(A), is plaintiff J.L., Dr. Lapp's sole child.*

80.     By negligently failing, as set forth above, to provide the authorities at the Alexandria ADC with sufficient medical records and information regarding Dr. Lapp's history and course of treatment, leading Dr. Inouye to terminate the medications that had returned Dr. Lapp to competence, the federal authorities proximately caused Dr. Lapp to undergo decompensation to the point of his suicide. Those responsible were either at Butner or with the Marshals Service or both: a matter that will require discovery to determine. *Pursuant to the FCTA, the United States is thus liable for the damages resulting from Dr. Lapp's wrongful death under CODE OF VA. §8.01-50 et seq. The sole beneficiary under this claim, pursuant to §8.01-53(A), is plaintiff J.L., Dr. Lapp's sole child.*

(Emphases added).

Given the kinds of damages available solely to specified statutory beneficiaries under Virginia's Wrongful Death statute, it was appropriate, not to say necessary, to identify the statutory beneficiary, which is why the words italicized above were included in the complaint.

While the government correctly points out that only Lisa Lapp may bring the wrongful death claims as administrator of Dr. Lapp's estate, using this uncontested truism as the basis for a motion to dismiss those claims borders on the frivolous.  Ms. Lapp is doing precisely that, as J.L.'s mother and next friend specifically identified  –  both in the caption of the case and in the identification of the parties  – as the administrator of the estate of Christopher Lapp.  It is beyond cavil that J.L., who cannot sue by herself, is suing by her mother and next friend who  has been specifically identified as the administrator of her late father's estate and who does not pretend to present a claim in her personal capacity.[5]

The government's sole authority for its contention is *Hall v. Bon Secours,* 2007 WL 295619 (E.D. Va. Jan. 29, 2007), in which the plaintiff claimed entitlement to sue for wrongful death "because he is the son of the decedent and her primary caretaker," notwithstanding that he had not been qualified as personal representative.   *Hall* at *2.  But Ms. Lapp has so qualified, her complaint so states, and her daughter, the sole beneficiary under the wrongful death statute, expressly sues by her as such.

---

[5]Using the government's straining construction of the complaint, if it is necessary for Ms. Lapp to be identified, each time her name is mentioned, as "*Mother and Next Friend of J.L. and Administrator of the Estate of Christopher Lapp,*" then in all fairness the government's brief should be stricken.  According to the brief's title, it has been filed on behalf of the "United States," whereas the defendant sued in this case is "The United States of America," which is also the name of the entity that prosecuted Christopher Lapp in *United States of America v. Lapp.* The "United States" named as the filing party in the brief opposed here could be the United States of Mexico, the name by which Mexico has been officially known since 1824, reaffirmed in the 1917 "Political Constitution of the United States of Mexico."   *See,* <https://www.loc.gov/resource/gdcmassbookdig.mexicanconstitut00mexi/?st=gallery>.

At worst for Ms. Lapp, should the Court nevertheless find it appropriate, she may amend her complaint to append the government's proposed descriptor when J.L.'s mother is mentioned, thus correcting the offending misnomer.  This modification, should it be deemed appropriate, would relate back to the filing of the complaint.  *See generally Locklear v. Berhman & Beving AB,* 457 F.3d 363. 366 (4th Cir. 2006 (relation back available for "mistake due to a misnomer")*; Goodman v. Praxair, Inc.,* 494 F. 3d 458 (4th Cir. 2007) (focusing on notice and prejudice to the defendant);  *Day v. City of Fredericksburg,* 2016 WL 7029830 (E. D. Va. Mar. 2, 2016).  Since the government continues to face two FTCA survival claims intricately connected to the two wrongful death claims it seeks to dismiss, no new defendant has been "drag[ged . . .] into [the] case."  *Intown Properties Management, Inc. v. Wheaton Van Lines, Inc.,* 271 F. 3d 164, 170 (4th Cir. 2001).  And FED. R. CIV. P. 17(a)(3) expressly provided that a court may not dismiss a case for failure to have been prosecuted in the name of the real party in interest, but must permit the substitution of same into the case after objection has been made.  *Esposito v. United States*, 368 F. 3d 1271 (10th Cir. 2004) (FTCA wrongful death case initially incorrectly identifying plaintiff); *Goodman v. United States*, 298 F. 3d 1048 (9 th Cir. 2002) (same); *see also Miller v. Longacre,* 172 F. 3d 44 (4th Cir. 1999); *Klein on behalf of Olik Techs., Inc. v. Olik Techs, Inc.,* 906 F.3d 215 (2d Cir. 2018); *Jones v. Las Vegas Metro. Police Dep't,* 873 F. 3d 1123 (9th Cir. 2017).  Should the Court, then, lend credence to the government's nomenclature objection, the remedy is granting leave to amend, not dismissal.

<u>Conclusion</u>

For these reasons, the government's motion to dismiss should be denied.

Respectfully submitted,

LISA LAPP, *et al.*,

By counsel

Dated:   May 1, 2023

Counsel for Plaintiff:


//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com
**LappLisa\Pldgs\2023-0501-OppUSAMTD**


<u>Certificate of Service</u>

I, Victor M. Glasberg, hereby certify that on this first day of May 2023, I electronically filed the foregoing Memorandum In Opposition to The United States' Partial Motion to Dismiss with the clerk of the court.

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

Counsel for Plaintiff